## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF OREGON

NAPHTALI RENSHAW; SUSAN
BARNHART; TYRRAS WARREN;
MICHAEL CARRIGAN; CHRISTOPHER
ROMPALA; and CHARLES AREFORD;          CASE NO. 6:26-1127

     Plaintiffs,                        COMPLAINT

         v.                        ADMINISTRATIVE PROCEDURE
                                        ACT; U.S. CONSTITUTION, First
GENERAL SERVICES                        Amendment
ADMINISTRATION,
                                        (Declaratory and Injunctive Relief)
     Defendants.

### INTRODUCTION

1.      This is a civil action for declaratory and injunctive relief under the

Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706. The claims arise from

defendants' violations of the APA; the First Amendment to the Constitution; various

statutes governing public access to federal buildings; and their implementing regulations.

2.      This action is brought pursuant to the right of review provision of the

APA, 5 U.S.C. § 702.

3.      Plaintiffs challenge a decision of the federal government to construct a tall

fence around the Eugene federal building, blocking a large portion of the Free Speech

Plaza located therein.

4.      Plaintiffs' claims arise under the Administrative Procedure Act ("APA"),

5  §§ U.S.C. 701 *et seq*.

### JURISDICTION

5.      This Court properly has jurisdiction over this action under 28 U.S.C. §

1346 (United States as defendant), as well as under 28 U.S.C. § 1331 (federal question),

1  -  COMPLAINT

because this action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6. Judicial review is authorized by 5 U.S.C. § 706, because plaintiffs are adversely affected.

7. An actual, justiciable controversy exists between plaintiffs and defendants. The requested declaratory judgment relief is therefore proper under 5 U.S.C. § 703 and 28 U.S.C. § 2201.

8. The challenged Fence Project is final and reviewable agency action; it marks the consummation of agency decision-making, obstructs plaintiffs physically from conducting First Amendment activity, and carries legal consequences, pursuant to 5 U.S.C. § 704.

9. The Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and grant permanent injunctive relief. 16 U.S.C. §§ 1855(f), 1861(d); 5 U.S.C. § 706.

10. Injunctive relief is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 2202.

## VENUE

11. Venue is proper in this District under 28 U.S.C. § 1391(e)(1), because a substantial part of property that is the subject of the action is situated in Lane County, Oregon, which is within this District.

## PARTIES

12. Plaintiff Naphtali Renshaw resides in Eugene, Oregon, and is a human rights activist who strongly opposes the current immigration policies and tactics. She

2 - COMPLAINT

regularly attends protests against ICE and deportations, and stands in solidarity with immigrant community members. She engages in a variety of protected activities at the Eugene federal building, including assembling on public property (the Eugene city-owned public sidewalks, the federal free speech plaza, and other areas adjacent to the federal building); giving speeches; chanting; singing protest songs; monitoring ICE activities; educating the public about political issues; marching; and using a megaphone to voice opinions about ICE and its tactics.

13.     Renshaw is a member of the interfaith group "Singing for Our Lives," which holds vigils and protests every Tuesday at the Federal Free Speech Plaza, near the corner of 7th and Pearl. They have been holding these vigils since September 2, 2025, and portions of their weekly program are dedicated to holding victims of ICE violence in sacred remembrance.

14.     Renshaw participated in an additional memorial on Saturday, March 28, 2026, in the inner/upper plaza at the revolving doors of the federal building, which is past the new Fence that was arrested.

15.     As the Singing for Our Lives group has grown, it has become necessary to move further into the Free Speech Plaza to accommodate additional attendees. However, this has presented a significant safety problem -- especially for individuals living with disabilities. Many singers with mobility issues would prefer to enter on Pearl Street, walk through the now-fenced off "tunnel" area where the federal court entrance used to be, and then proceed to the upper plaza area without needing to deal with the stairs.

16.     Plaintiff Susan Barnhart resides in Eugene, Oregon, and has been a human rights and anti-war activist since the 1980s. She is a retired Oregon social worker who

3  -  COMPLAINT

strongly opposes the current immigration policies and tactics. She regularly attends protests against ICE and deportations, and stands in solidarity with immigrant community members. She has protested and continues to protest in Eugene, Oregon, at the downtown federal building. Historically, she has attended protests at the Eugene federal Free Speech Plaza on a regular basis for decades. She has protested numerous wars and other federal government actions, in all areas of that Plaza. In Eugene, she and a wide coalition of activists opposed to the Trump regime immigration policies and roundups regularly show up at the Eugene federal building.

17.      Barnhart is part of a local group called Planet vs. Pentagon, that regularly protests the many harms of war. Sometimes the protests are planned, and sometimes they are spontaneous in response to an event.

18.      Barnhart engages in a variety of protected activities at the Eugene federal building, including assembling on public property (the Eugene city-owned public sidewalks, the federal free speech plaza, and other areas adjacent to the federal building); giving speeches; singing protest songs; chanting; marching; monitoring ICE activities; educating the public about political issues; and using a megaphone to voice her opinions about ICE and its tactics.

19.      Barnhart and other elders in the community use the benches in the Federal Free Speech Plaza to sit and participate in these political events.

20.      Currently, due to the Fence, Barnhart and others no longer have access to the benches on the Free Speech Plaza.

21.      Barnhart and other plaintiffs have seen first-hand that some elders who have mobility issues access the Free Speech Plaza from Pearl Street and, until the Fence

4   -   COMPLAINT

was erected, walked the level paved area to the upper Free Speech Plaza area where the benches are located, which is the only access to the plaza that does not require climbing stairs.

22.    Plaintiff Tyrras Warren is another Eugene community activist whose First Amendment activities are harmed by the Fence. Until it was fenced off, he gathered with others in the Federal Free Speech Plaza area, including the upper plaza areas near the ICE entry doors, for lawful assembly and protest, including using art as his expression. He has often been part of assemblies that simply do not fit into the small remaining area of the Plaza that is now accessible. Since the Fence went up, he has observed people with mobility issues squeezed out of gathering on the Plaza, because the crowds in the smaller remaining area were too dense and they were unable to go up the stairs. Prior to the Fencing, he observed several people with mobility issues, particularly older folks, enter on the Pearl Street side, walk or wheel themselves through the now fenced-off corridor area (where the former entrance to the federal court was located), and into the upper open Plaza area so they could safely join in the protests.

23.    Plaintiff Michael Carrigan has resided in Eugene, Oregon, since the early 1970s. A practicing Buddhist, he has been a human rights and anti-war activist his entire adult life. He is retired now, but for fourteen years he worked at the Community Alliance of Lane County (CALC), a nonprofit that collaborates to create a more just and peaceful community. Before that, he organized with Clergy and Laity Concerned about Vietnam (now CALC). A strong opponent to the current administration's immigration policies and numerous global acts of aggression and war, he regularly attend protests against ICE and deportations at the Eugene federal building, and stands in solidarity with immigrant

5  -  COMPLAINT

community members.

24.    Carrigan has historically organized and attended countless rallies and protests at the Federal Free Speech Plaza on a regular basis since the 1970s. He knows first-hand that, in the 1970s, the Eugene Federal building (formerly housing the Federal Courthouse) and its Free Speech Plaza were center stage for hundreds of anti-war protests. Since then, the location has been the site of protests for numerous causes and court cases -- from war, to forests and climate, to inhumane and senseless immigration actions. Its large size, central location, seat of the federal government in Eugene, visibility to traffic on three sides, and the fact that it is Eugene's primary traditional public forum have made it one of the most used locations for rallies and protests throughout the decades.

25.    Like Plaintiff Barnhart, Carrigan is part of the local group called Planet vs. Pentagon that regularly protests the many harms of war at the Plaza. And, as an elder in the community, he also has used the benches in the Federal Free Speech Plaza to sit and participate in the events. Currently, due to the fencing, he and others no longer have access to the benches on the Free Speech Plaza.

26.    Plaintiff Christopher Rompala is a local community member, nurse, and human rights activist who strongly opposes the current immigration policies and tactics. He has attended protests against ICE and deportation at the downtown federal building, and will continue to do so. In late January 2026, he participated in a candlelight vigil organized and attended by himself and many other local nurses after the ICE killing of nurse Alex Pretti in Minneapolis. They held the vigil in the upper Plaza area, which is now fenced off. The candlelight vigil included people assembling and grieving together,

6  -  COMPLAINT

laying down flowers and other items in a shrine, participated in speeches, songs and other expression. Hundreds of community members attended this vigil. There is no way that vigil would fit into the small Federal Free Speech Plaza area that is currently open for public use.

27.     Plaintiff Charles Areford has participated and continues to participate in regular protests and First Amendment activity at the Eugene federal courthouse.

28.     The current fencing greatly limits the access to the Free Speech Plaza and limits the ability of disabled people to safely access any area of the Free Speech Plaza other than the area adjacent to the sidewalk at 7th and Pearl -- which is now packed with people because it is the only small area available to assemble.

29.     The fence and closure of all but a sliver of the Plaza has greatly harmed people's ability to gather, sing, pray, and protest at the Eugene federal building, the location where the harm and suffering of our immigrant community members are perpetuated.

30.     The plaintiffs and others similarly situated will continue to show up and protest at the Eugene federal building, and specifically intend to use the entire Federal Free Speech Plaza, as well as the public sidewalks adjacent to the ICE building, weekly or more frequently; and the blocking off of the upper Plaza is an ongoing harm to their constitutional right to express themselves under the First Amendment, and to their liberty. The decision to fence off portions of the Federal Free Speech Plaza is preventing and will continue to prevent plaintiffs and others similarly situated from utilizing these traditional public forums for their assembly, speech and protest.

7   -   COMPLAINT

31.    Plaintiffs have sustained injury to their interests from the building of the Fence.

32.    Defendant General Services Agency, as an agency of the federal government, manages federal property, and in doing so is required to comply with various laws and regulations, including the First Amendment to the U.S. Constitution.

## FACTUAL BACKGROUND

33.    On April 29, 2026, the federal government erected a tall gate/fence ("the Fence") around much of the Eugene downtown federal building where ICE and other federal agencies are housed (hereinafter "Eugene federal building"). The Eugene federal building is surrounded on all four sides with public (City of Eugene) sidewalks, and contains the Federal Free Speech Plaza area near the corner of Pearl Street and 7th Avenue. Both that Plaza and the sidewalks around the federal building have for decades been a traditional location for assembly, protest, vigils, and other First Amendment activity.

34.    The Plaza has a small, lower area near the corner of 7th Avenue and Pearl Street (the lower Plaza) and a much larger area up a small flight of broad stairs, where there are benches, grassy areas, and a paved area suitable for speeches and gatherings (the upper Plaza). That upper Plaza is also accessible through a breezeway from Pearl Street, with no stairs. The April 2026 Fence Project has blocked off all public access to the upper Plaza.

35.    As noted *supra* in the allegations regarding the plaintiffs, the Fence Project has harmed and will continue to harm the First Amendment interests of the plaintiffs and others similarly situated.

8   -   COMPLAINT

36.    To plaintiffs' knowledge, defendants provided no opportunity for public notice and comment on the Fence Project.

37.    The first public announcement regarding the Project, to plaintiffs' knowledge, was in February 2026, when the Eugene Police Chief Skinner told the Eugene Police Commission that a fence would be erected shutting off access to the courtyard area of the federal building, following protests two weeks earlier. He stated: "We are facilitating the arrival of some fencing that will go up there"; that its purpose would be "helping to better articulate kind of the spaces where the protesting can or should occur"; and that crossing the barrier should let protesters "know that you're likely going to be met with a with a fairly resistive outcome." Skinner stated that he expected the city to be issuing permits to "close streets down for a variety of different things to help facilitate that, and so we'll likely be doing that in the coming week or weeks."

38.    A City response to a public records request indicated that the federal General Services Administration was advising the City of Eugene that the "purpose" of the Fence Project was that "[t]he temporary fence is required for approximately two years to protect the building, employees, and facilitate repairs to damaged structures."

39.    The federal government told the City that "the fence will be installed on the sidewalk until it connects to the plaza. We will provide a designated space for protesters to exercise their First Amendment rights by utilizing the lower 'free speech plaza.' From the plaza we will connect the fence along the city sidewalk of 7th st. where it will connect back onto Federal property and finish against the South tower"; and "The lower plaza will be fenced off to provide the public a space to exercise peaceful protest activities."

9  -  COMPLAINT

40.    The federal website regarding the Eugene federal courthouse Plaza states:

The Eugene Federal Building and Courthouse played a significant civil role in the early 1970s and during the Vietnam War. The plaza was and remains a favored venue as a stage for protests against the government's policies. There is demonstration activity weekly. Large demonstrations occurred in the spring of 2003, over the U.S. invasion of Iraq, in 1991, with a demonstration against the U.S. invasion of Kuwait and in 1992, due to the Rodney King beating.  Most of the demonstrations are peaceful and without violence or arrests. The plaza has become a community focal point for citizen gatherings of many types. The courtyard was designed for people to congregate and be part of outdoor events and venues. The courtyard design was not intended for political demonstrations, but it has gained cultural and political significance due to these activities.

https://web.archive.org/web/20160303173759/http://www.gsa.gov/portal/ext/html/site/hb

/category/25431/actionParameter/exploreByBuilding/buildingId/1144# ("Significance"

tab).

41.    40 U.S.C. 3306 dictates the public space policies for the GSA. Among

other things, it requires GSA administrators, to the extent practicable, to encourage public

access and maintain pedestrian traffic around and through public buildings.

42.    The Architectural Barriers Act of 1968 (42 U.S.C. § 4151 *et seq*.)

prohibits physical barriers that deny access to individuals with disabilities.

### CLAIMS FOR RELIEF

### Count I
### APA – 5 U.S.C. 706(2)(A) -- Arbitrary and Capricious Decision

1.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

2.    The Administrative Procedure Act authorizes judicial review of final

agency action. 5 U.S.C. § 704.

3.    Final agency actions are those (1) that "mark the consummation of the

agency's decision-making process" and (2) "by which rights or obligations have been

determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S.

10 -   COMPLAINT

154, 178 (1997) (quotation marks omitted).

4.    Plaintiffs challenge the government's building of the Fence – a final agency action that marks the consummation of the government's decision-making process because, to plaintiffs' knowledge, there are no further steps necessary to complete that project.

5.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

6.    The building of the Fence is arbitrary and capricious in multiple respects:

a.    First, as set forth herein, the building of the Fence conflicts with laws, regulations, and constitutional provisions. This alone renders it arbitrary and capricious.

b.    Second, the defendants have failed to proffer a reasonable explanation for the building of the Fence.

c.    Third, the building of the Fence reflects no consideration of reasonable alternative approaches.

d.    Fourth, the building of the Fence failed to consider important aspects of the problem.

7.    For these and other failings, the building of the Fence is arbitrary and capricious.

8.    As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

9.    Absent injunctive relief, defendants' constructed Fence Project will

11 - COMPLAINT

continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

## COUNT II
### Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(B)
### Contrary to Constitutional Right

10.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

11.     The APA requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is found to be contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

12.     Defendants' decision to build the Fence, and the building of the Fence, are contrary to the First Amendment's protections for speech, protest, and expressive conduct.

13.     As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

14.     Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

## Count III
### Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(B)
### Decision Contrary to Law

15.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

16.     Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

12 -  COMPLAINT

17.     The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original).

18.     The decision to build the Fence is not in accordance with law because it is contrary to the statutes set forth *supra*.

19.     As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

20.     Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

**Count IV**
**Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(D)**
**Failure to Observe Required Procedure**

21.     Plaintiffs restate and reallege all paragraphs above as if fully set forth herein.

22.     A reviewing court must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

23.     The APA requires that agencies follow public notice-and-comment rulemaking procedures before promulgating regulations. *Id*. § 553(b), (c).

24.     Defendants failed to provide notice and an opportunity for public comment regarding the building of the Fence.

13 - COMPLAINT

25.     Defendants' actions as described above are arbitrary and capricious and/or without observance of procedure required by law; and therefore, violate the APA. 5 U.S.C. § 706(2).

26.     As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

27.     Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

### DEMAND FOR RELIEF

WHEREFORE, plaintiffs pray that this Court make and enter an order:

1.     Declaring that defendants violated the APA and the Constitution of the United States, in one or more of the ways set forth herein.

2.     Enjoin the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the Fence Project; requiring them to restore the status quo by removing the fence and/or keeping the current door in the Plaza area of the fence open to the public.

3.     Award plaintiffs their costs, attorneys' fees, and other expenses of litigation, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

4.     Award such other relief as the Court deems just and proper.

Respectfully submitted June 4, 2026,

                    /s/ Marianne Dugan
            Marianne Dugan, Oregon State Bar No. 932568

14  -  COMPLAINT

Lauren Regan, OSB # 970878
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St., Ste 301 # 359
Eugene, OR 97401
(541) 687-9180
mdugan@cldc.org
lregan@cldc.org

15  -  COMPLAINT