**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF OREGON**

NAPHTALI RENSHAW; SUSAN
BARNHART; TYRRAS WARREN;
MICHAEL CARRIGAN;
CHRISTOPHER ROMPALA; and
CHARLES AREFORD;

        Plaintiffs,

            v.

GENERAL SERVICES
ADMINISTRATION,

        Defendant.

CASE NO. 6:26-cv-1127-MTK

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING ORDER

ORAL ARGUMENT REQUESTED

Plaintiffs move under Federal Rule of Civil Procedure 65(b) for a temporary restraining order and preliminary injunction enjoining the recent construction of a fence around much of the Eugene federal building, including blocking the Free Speech Plaza.

## INTRODUCTION

This is a civil action for declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706. The claims arise from Defendant's violations of the APA; the First Amendment to the Constitution; and various statutes governing public access to federal buildings and their implementing regulations. This action is brought pursuant to the right of review provision of the APA, 5 U.S.C. § 702. Plaintiffs challenge a decision of the federal government to construct a tall metal fence around the Eugene federal building, blocking a large portion of the Free Speech Plaza located therein. Plaintiffs' claims arise under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*.

As discussed in detail in the declarations filed herewith, the Plaintiffs have

1  -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
      TEMPORARY RESTRAINING ORDER

standing to challenge this government action. This Court properly has jurisdiction over this action under 28 U.S.C. § 1346 (United States as defendant), as well as under 28 U.S.C. § 1331 (federal question), because this action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Judicial review is authorized by 5 U.S.C. § 706, because Plaintiffs are adversely affected. An actual, justiciable controversy exists between Plaintiffs and Defendant. The requested declaratory judgment relief is therefore proper under 5 U.S.C. § 703 and 28 U.S.C. § 2201.

The challenged Fence Project is final and reviewable agency action; it marks the consummation of agency decision-making, obstructs Plaintiffs physically from conducting First Amendment activity, and carries legal consequences, pursuant to 5 U.S.C. § 704.

The Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and grant permanent injunctive relief. 16 U.S.C. §§ 1855(f), 1861(d); 5 U.S.C. § 706. Injunctive relief is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 2202.

Plaintiffs seek declaratory and injunctive relief against Defendant General Services Administration (GSA), declaring the fence to be unlawful under the Administrative Procedure Act (APA), and issuing appropriate injunctive relief to protect the Constitutional interests of the Plaintiffs.

## ARGUMENT

As discussed *infra*, Plaintiffs have standing to challenge the regulations. They are likely to succeed on the merits, and the likely harm in the absence of an injunction is irreparable. An injunction is in the public interest, and the balance of harms favors an

2  -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

injunction.

## I.    LEGAL STANDARD FOR INJUNCTION

A plaintiff seeking a temporary restraining order or preliminary injunction must establish four factors: (1) a likelihood of success on the merits, (2) likely irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

When the government is a party, courts consider the last two factors together, because the equities for the State consist of the public interest in a case such as this. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id*. at 1131.

## II.    FACTUAL BACKGROUND

Plaintiffs filed this action on behalf of themselves, and others similarly situated, to challenge the recent erection of a tall metal fence surrounding the Eugene federal building, blocking off a large portion of the Free Speech Plaza ("the Upper Plaza"), thereby completely blocking access to large gathering spaces, benches, and other areas central to vigils and other First Amendment-protected activity.

3   -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

As explained in detail in the declarations of Plaintiffs filed herewith, Plaintiffs, and others similarly situated, have for decades been assembling and exercising their free speech rights at the Free Speech Plaza and other areas at the federal building.

The Free Speech Plaza at the Eugene federal building (which now houses the Eugene office of the Department of Homeland Security and Immigration and Customs Enforcement (ICE)) is within a one-block-square federal building located between 6th and 7th Avenues and Pearl and High Streets in Eugene. The building is surrounded by City of Eugene-owned public sidewalks, and contains a plaza area, both of which have been consistently used as traditional public fora.

As this Court (Judge Aiken) recently noted, this area (the Free Speech Plaza and surrounding sidewalks)

> has been the traditional center of protest activity in the Eugene . . . . Protesters can avail themselves of high vehicular, pedestrian, and bike traffic, as well as being in the epicenter of government activity -- a traditional target of protests. *See Occupy Eugene v. U.S. Gen. Servs. Admin.*, 43 F. Supp. 3d 1143, 1146 (D. Or. 2014) (Occupy Eugene protested at the plaza on the ground of the Federal building "because it has always been a lawful place for demonstrators and picketers to congregate [and] . . . the Plaza is located on a highly-visible, busy street corner [and] is adjacent to courthouses, federal, state, and municipal political offices.") (quotation marks and citations omitted). Of note, in *Occupy Eugene*, the plaza of the Federal Building -- which is on the federal property -- was held to be a traditional public forum because of its "long history of both protests and other gatherings[.]" *Id*. at 1153.

*Longworth v. Trump,* 6:25-cv-02268-AA, Document 40 (3/2/26) at 10.

Defendant's own GSA website regarding the Eugene federal courthouse notes that the Plaza, in particular, has been a locus for Eugene protests for at least 50 years:

> The Eugene Federal Building and Courthouse played a significant civil role in the early 1970s and during the Vietnam War. The plaza was and remains a favored venue as a stage for protests against the government's policies. There is demonstration activity weekly. Large demonstrations occurred in the spring of 2003, over the U.S. invasion of Iraq, in 1991, with a demonstration against the

4  -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

U.S. invasion of Kuwait and in 1992, due to the Rodney King beating. Most of the demonstrations are peaceful and without violence or arrests. The plaza has become a community focal point for citizen gatherings of many types. The courtyard was designed for people to congregate and be part of outdoor events and venues. The courtyard design was not intended for political demonstrations, but it has gained cultural and political significance due to these activities.

https://web.archive.org/web/20160303173759/http://www.gsa.gov/portal/ext/html/site/hb/category/25431/actionParameter/exploreByBuilding/buildingId/1144# ("Significance" tab).

Recently, in this court, the federal government has admitted that this area is a public forum, and that political speech therein is protected, stating:

To the extent that Plaintiffs are engaging in political speech, such verbalized protests outside of the federal building are protected under the First Amendment. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).There is also no dispute that the sidewalk around the [Eugene] Federal Building is a traditional public forum. *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks.").

*Longworth v. Trump*, Case 6:25-cv-02268-AA, Document 30 (2/4/26) at 22.

Defendant General Services Administration (GSA) was created in the 1940s -- "tasked with administering supplies and providing workplaces for federal employees," and now has evolved, among other things, "provid[ing] stewardship of the way the government uses and provides real estate, acquisition services, and technology"; "provid[ing] workspace to more than 1 million federal civilian workers"; and "oversee[ing] the preservation of more than 480 historic buildings." https://www.gsa.gov/about-gsa/mission-and-background/our-missions-evolution (last visited 6/5/26).

40 U.S.C. 3306 dictates the public space policies for Defendant GSA. Among other things, it requires GSA administrators, to the extent practicable, to encourage public

5   -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

access and maintain pedestrian traffic around and through public buildings. Additionally, the Architectural Barriers Act of 1968 (42 U.S.C. § 4151 *et seq.*) prohibits physical barriers that deny access to people with disabilities.

Plaintiffs, who reside in Eugene, Oregon, are human rights activists strongly opposed to the current immigration policies and tactics. *See* Declarations filed herewith. They regularly attend protests against ICE and deportations, and stand in solidarity with immigrant community members. Their First Amendment activity focuses, especially recently, on the Eugene federal building, and, as detailed in their declarations, has been and will continue to be harmed by the newly-constructed fence blocking the upper Plaza area and other areas of the federal building. As explained in detail in Plaintiffs' declarations, filed herewith, the Fence Project has harmed and will continue to harm the First Amendment interests of the Plaintiffs and others similarly situated, causing irreparable injury, and likely causing ongoing constitutional injuries.

On April 29, 2026, the federal government erected a tall gate/fence ("the Fence") around much of the Eugene downtown federal building where ICE and other federal agencies are housed (hereinafter "Eugene federal building"). Dugan Decl., Exhibits A, B.

The Plaza has a small, lower area near the corner of 7th Avenue and Pearl Street (the lower Plaza) and a much larger area up a small flight of broad stairs, where there are benches, grassy areas, and a paved area suitable for speeches and gatherings (the upper Plaza). That upper Plaza is also accessible through a breezeway from Pearl Street, with no stairs. The April 2026 Fence Project has blocked off all public access to the upper Plaza. *See* Declarations filed herewith.

To Plaintiffs' knowledge, Defendant provided no opportunity for public notice

6  -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

and comment on the Fence Project. The first public announcement regarding the Project, to plaintiffs' knowledge, was in February 2026, when the Eugene Police Chief Skinner told the Eugene Police Commission that a fence would be erected shutting off access to the courtyard area of the federal building, following protests two weeks earlier. Dugan Decl., Exhibit C. He stated: "We are facilitating the arrival of some fencing that will go up there"; that its purpose would be "helping to better articulate kind of the spaces where the protesting can or should occur"; and that crossing the barrier should let protesters "know that you're likely going to be met with a with a fairly resistive outcome." *Id.* Skinner stated that he expected the city to be issuing permits to "close streets down for a variety of different things to help facilitate that, and so we'll likely be doing that in the coming week or weeks." *Id.*

A City response to a public records request indicated that the federal General Services Administration was advising the City of Eugene that the "purpose" of the Fence Project was that "[t]he temporary fence is required for approximately two years to protect the building, employees, and facilitate repairs to damaged structures." Dugan Decl. Exhibit D at 1.

The federal government told the City that "the fence will be installed on the sidewalk until it connects to the plaza. We will provide a designated space for protesters to exercise their First Amendment rights by utilizing the lower 'free speech plaza.' *Id.* at 5. "From the plaza we will connect the fence along the city sidewalk of 7th St. where it will connect back onto Federal property and finish against the South tower"; and "The lower plaza will be fenced off to provide the public a space to exercise peaceful protest activities." *Id.* at 6.

7  -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
       TEMPORARY RESTRAINING ORDER

### III.    PLAINTIFFS HAVE STANDING

Standing exists when a plaintiff has "suffered an injury in fact -- a concrete and imminent harm to a legally protected interest . . . that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (internal quotation marks omitted).

"[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" for other parties in the litigation. *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (citing *Bowsher* v. *Synar,* 478 U.S. 714, 721 (1986)). *See also Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (same, citing *Rumsfeld*); *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998); *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715, 719 (1990); *Watt v. Energy Action Ed. Found.*, 454 U.S. 151, 160 (1981); *Arlington Heights v. Metro. Housing Dev't Corp.*, 429 U.S. 252, 264, and n. 9 (1977); *Buckley v. Valeo*, 424 U.S. 1, 12 (1976) (per curiam).

Although only one plaintiff must demonstrate standing, all the Plaintiffs have standing based on ongoing and impending injuries. As explained in Plaintiffs' declarations in detail, they have regularly protested on the upper and lower Plaza areas and sidewalks surrounding the Eugene federal building to exercise their First Amendment rights to assembly and speech, and will continue to do so; and the recently-erected fence interferes with those activities.

For example, Plaintiff Naphtali Renshaw is a member of the interfaith group

8   -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

"Singing for Our Lives," which holds vigils and protests every Tuesday at the Federal Free Speech Plaza, near the corner of 7th and Pearl. They have been holding these vigils since September 2, 2025, and portions of their weekly program are dedicated to holding victims of ICE violence in sacred remembrance. As the Singing for Our Lives group has grown, it has become necessary to move further into the Free Speech Plaza to accommodate additional attendees. Prior to the erection of the Fence, many singers with mobility issues enter on Pearl Street, walk through the now-fenced off "tunnel" area where the federal court entrance used to be, and then proceed to the upper plaza area without needing to deal with the stairs.

As another standing example, Plaintiff Susan Barnhart, has been exercising her First Amendment rights at the Eugene federal building since the 1980s. She is a retired Oregon social worker who strongly opposes the current immigration policies and tactics. She regularly attends protests against ICE and deportations, and stands in solidarity with immigrant community members. She has protested and continues to protest in Eugene, Oregon, at the downtown federal building. Barnhart and other elders in the community use the benches in the Federal Free Speech Plaza to sit and participate in these political events. Currently, due to the Fence, Barnhart and other elders and people with mobility issues no longer have access to the benches on the Free Speech Plaza.

## IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS; OR AT THE LEAST HAVE RAISED SERIOUS QUESTIONS GOING TO THE MERITS, AND THE BALANCE OF HARDSHIPS TIPS IN THEIR FAVOR

Under the APA, courts "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "without observance

9   -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

The Administrative Procedure Act (APA) requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is found to be arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.  5 U.S.C. § 706(2)(A)-(D).

By issuing a decision to erect the Eugene Fence and then erecting said Fence, Defendant violated the APA in one or more of the following ways:

a.      Taking action that is arbitrary, capricious, an abuse of discretion, and/or not otherwise in accordance with law;

b.      Taking action that is contrary to constitutional right;

c.      Taking action that is not in accordance with law;

d.      Taking action that is without observance of procedure required by law.

### A.      Plaintiffs Have Met the Injunction Test for Count 1 -- APA – 5 U.S.C. 706(2)(A) -- Arbitrary and Capricious Decision

The Administrative Procedure Act authorizes judicial review of final agency action. 5 U.S.C. § 704. Final agency actions are those (1) that "mark the consummation of the agency's decision-making process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation marks omitted).

Plaintiffs challenge the government's building of the Fence – a final agency action that marks the consummation of the government's decision-making process because, to plaintiffs' knowledge, there are no further steps necessary to complete that

10 -    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

project.

Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). The building of the Fence is arbitrary and capricious in multiple respects:

a.      First, as set forth herein, the building of the Fence conflicts with laws, regulations, and constitutional provisions. This alone renders it arbitrary and capricious.

b.      Second, Defendant have failed to proffer a reasonable explanation for the building of the Fence.

c.      Third, the building of the Fence reflects no consideration of reasonable alternative approaches.

d.      Fourth, the building of the Fence failed to consider important aspects of the problem.

For example, Defendant asserted in emails to the City that "[t]he temporary fence is required for approximately two years to protect the building, employees, and facilitate repairs to damaged structures." Dugan Decl. Exhibit D at 1. No evidence was provided that explains why it would take two years (far from "temporary" in the context of political First Amendment activities) to remedy the broken windows at the building.

**B.      Plaintiffs Have Met the Injunction Test for Count 2 -- Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(B) -- Contrary to Constitutional Right**

The APA requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is found to be contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B). Defendant's decision to build the Fence, and the building of the Fence, are contrary to the First Amendment's protections for

11 -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
       TEMPORARY RESTRAINING ORDER

speech, protest, and expressive conduct.

As discussed *supra,* it is undisputed that the fenced-off area is a prime traditional public forum for political assemblies and speech, at the heart of the protections of the First Amendment. The Supreme Court has held that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *U.S. v. Grace*, 461 U.S. 171, 177, 103 S. Ct. 1702 (1983) (collecting cases). "Such traditional public forum property occupies a special position in terms of First Amendment protection and cannot lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression." *Id*. at 180, 103 S. Ct. 1702.

When the government restricts speech in a traditional public forum, strict scrutiny dictates that restrictions are allowed only if they serve a compelling state interest and are narrowly tailored to meet the needs of that interest. There is no evidence Plaintiffs are aware of that would carry the government's heavy burden on that point.

C.    **Plaintiffs Have Met the Injunctive Test for Count 3 -- Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(B) -- Decision Not in Accordance with Law**

Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc*., 537 U.S. 293, 300 (2003) (emphasis in original). The decision to build the Fence is not in accordance with law because it is contrary to the

12 -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
         TEMPORARY RESTRAINING ORDER

statutes set forth *supra*. In particular, 40 U.S.C. 3306 requires GSA administrators, to the extent practicable, to encourage public access and maintain pedestrian traffic around and through public buildings. Additionally, the Architectural Barriers Act of 1968 (42 U.S.C. § 4151 *et seq*.) prohibits physical barriers that deny access to people with disabilities.

### D.    Plaintiffs Have Met the Injunction Test for Count 4 -- Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(D) -- Failure to Observe Required Procedure

A reviewing court must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The APA requires that agencies follow public notice-and-comment rulemaking procedures before promulgating regulations. *Id*. § 553(b), (c). As noted *supra,* Defendant failed to provide notice and an opportunity for public comment regarding the building of the Fence. sDefendant's actions as described above are arbitrary and capricious and/or without observance of procedure required by law; and therefore, violate the APA. 5 U.S.C. § 706(2).

### V.    THE DECISION TO BUILD THE FENCE, AND THE COMPLETED FENCE PROJECT, THREATEN IRREPARABLE HARM

As explained *supra*, Defendant's Fence Project in Eugene has physically blocked Plaintiffs from exercising their First Amendment rights at the Free Speech Plaza; and is also likely to chill the First Amendment activities of other, less outspoken, critics of the current regime. *See Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (to establish a First Amendment claim, Plaintiffs must show that the government conduct "would chill a person of ordinary firmness from future First Amendment activity").

The Ninth Circuit has repeatedly held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

13 -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
       TEMPORARY RESTRAINING ORDER

injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

As set forth in the declarations filed herewith, the Fence has cut off public access entirely to the upper Plaza, which not only makes larger vigils and other gatherings impossible, it also hinders or blocks entirely access for elders and others with mobility issues who relied on the benches in the upper Plaza during their First Amendment activities.

The irreparable harm is not just likely, it has occurred and is ongoing.

## VI.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF ISSUING A TEMPORARY RESTRAINING ORDER

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24, 129 S. Ct. 365 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When, as here, the government is a party to the action, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, the balance of equities and the public interest weigh in favor of issuing a temporary restraining order and preliminary injunction. As explained in detail in the declarations filed herewith, Plaintiffs – some for decades – have exercised their clearly protected First Amendment rights at the Free Speech Plaza at the Eugene federal building, and are now blocked from doing so in large part. In addition, the public in general is likely to be chilled by this government action, reducing their likelihood of expressing their opinions, and gutting quintessential democratic freedoms.

14 -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
       TEMPORARY RESTRAINING ORDER

In contrast, the federal government faces no harm from an injunction. The federal government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015). *See also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (holding that although "[t]here is generally no public interest in the perpetuation of unlawful agency action," "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operation'").

## VII.   A VARIETY OF EQUITABLE REMEDIES ARE WITHIN THE COURT'S AUTHORITY

A district court has "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 999 (9th Cir. 2000) (internal quotation marks omitted). Appropriate preliminary remedies in the instant case include requiring Defendant to restore the status quo by removing the fence and/or requiring that the door in the Plaza area of the fence be opened to the public. The latter remedy, however, does not address the issue of people with mobility issues being blocked from the upper Plaza due to the breezeway entrance from Pearl being blocked. Therefore, briefing on preliminary remedies for that issue would be appropriate, with the Defendant being required to present evidence as to why that portion of the fence should not be removed.

## VIII.   IT IS APPROPRIATE FOR THE COURT TO WAIVE BOND

In issuing the requested injunctive relief, the Court should require no or only a nominal bond. *See* Fed. R. Civ. Proc. 65(c) (plaintiff must generally post a bond "in such sum as the court deems proper"); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir.

15 -   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
        TEMPORARY RESTRAINING ORDER

2009) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any." (citation and internal quotation marks omitted)). Where, as here, Plaintiffs seek to vindicate the public interest courts routinely waive the bond requirement or impose a nominal bond. *See California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985) (no bond); *Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975) (reversing unreasonably high bond because it served to thwart citizen actions). This Court should do likewise.

## CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order and preliminary injunction.

Respectfully submitted June 5, 2026,

/s/ Marianne Dugan
Marianne Dugan, Oregon State Bar No. 932568
Lauren Regan, OSB # 970878
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St., Ste 301 # 359
Eugene, OR 97401
(541) 687-9180
mdugan@cldc.org
lregan@cldc.org

16 -  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
      TEMPORARY RESTRAINING ORDER