UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| NAPHTALI RENSHAW; SUSAN BARNHART; TYRRAS WARREN; MICHAEL CARRIGAN; CHRISTOPER ROMPALA; and CHARLES AREFORD,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GENERAL SERVICES ADMINISTRATION,<br><br>　　　　Defendant. | Case No. 6:26-cv-01127-MTK<br><br>**OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE** |

**KASUBHAI,** United States District Judge:

Plaintiffs bring claims for declaratory and injunctive relief under the Administrative Procedure Act ("APA") against Defendant General Services Administration ("Defendant" or "GSA") related to the installation of a fence surrounding the Eugene Federal Building in Eugene, Oregon. This matter comes before the Court on remand from the Ninth Circuit "to consider and clarify what alternative measures the Appellant is authorized to employ . . . the time line for such measures, and whether such alternative fencing can be constructed and accomplished without maintaining the perimeter fence." ECF No. 47.

Page 1 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

## BACKGROUND

### I.    Preliminary Injunction Hearing and Ruling

Plaintiffs filed this lawsuit on June 4, 2026, and filed a Motion for Preliminary Injunction and Temporary Restraining Order on June 8, 2026. The Court reviewed Plaintiffs' motion on the day it was filed and, noting that Plaintiffs had not satisfied the requirements for issuing a temporary restraining order without notice to the adverse party under Rule 65(b)(1), denied that portion of the motion. ECF No. 12. The Court also ordered an expedited briefing schedule on the Motion for Preliminary Injunction and set the matter for an evidentiary hearing and oral argument on June 18, 2026. *Id.*

At oral argument, Plaintiffs called multiple witnesses to testify in support of their motion. While submitting declarations in support of its position before the evidentiary hearing, Defendant declined to call any witnesses. Because the Court was inclined to develop a full evidentiary record, the Court instructed Defendant's counsel to arrange the appearance of Ryan Anderson—the Building Manager for the Public Building Service (a division of Defendant GSA) for the Eugene Federal Building—to appear and develop a sufficient record. After an extensive evidentiary hearing, site visit, and oral argument, the Court issued a detailed oral ruling granting the preliminary injunction on June 22, 2026, and ordering removal of the perimeter fence. ECF No. 31. Though noting it would provide a formal written opinion, the Court went to great lengths to provide a robust description of its reasoning for granting the motion so that Defendant could properly evaluate whether to appeal the Court's order even in the absence of the written opinion. Tr. of June 22, 2026 Hearing at 39:22-40:5, 79:3-87:10, ECF No. 39.

Having found that Plaintiffs satisfied the required factors for a preliminary injunction, the Court invited discussion as to the scope of the remedy. It did so even though Defendant's opposition to Plaintiffs' motion did not raise any objection to Plaintiffs' requested remedy,

Page 2 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

contesting only whether Plaintiffs satisfied the requirements for the Court to grant a preliminary injunction in the first instance. The Court was interested in whether there was an alternative fencing option available that might be appropriately narrowly tailored to the government interests at issue. After some discussion, the Court authorized a single alternative fencing design that would involve fencing just under the breezeway along the edges of the main building and along the doors and windows directly against the annex. The Court's proposal is pictured below, with the proposed fencing depicted in pink highlight superimposed over blue pen.



At the hearing on June 22, 2026, Defendant failed to provide any meaningful details about timing and process for moving the existing perimeter to the location this Court indicated would be authorized. Moreover, Defendant did not express any serious interest in undertaking

Page 3 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

the authorized alternative. Further, the Court did not have confidence that Defendant and its counsel would use any additional time to consider implementing the authorized alternative to further resolution. Ultimately, the Court determined that restoration of the status quo (removal of the perimeter fence) was the most viable, timely, and certain prohibitory injunctive remedy and ordered the fence removal. The Court declined to order Defendant to adopt the proposed reconfiguration. However, the Court authorized Defendant to implement the alternative fencing the Court proposed on GSA's own timeline following the removal of the existing fencing. The Court ordered that the perimeter fencing be removed within 48 hours. ECF No. 31.

## II.    Extensions and Stays

On June 23, 2026, Defendant moved for an eleven-day extension of time to comply with the Court's order, from June 24, 2026, to July 5, 2026. ECF No. 33. Defendant represented that permitting and scheduling of the work would take 7-10 days. Second Anderson Decl. ¶ 8, ECF No. 34. At oral argument on June 24, 2026, the Court concluded that no work could feasibly be be completed between July 3, 2026, and July 5, 2026 due to the holiday weekend, and that Defendant would likely be able to obtain a permit on an expedited basis given its working relationship with the City of Eugene. ECF No. 38. In the colloquy between the Court and Defendant's counsel, the Court was met with uncertainty about whether Defendant could timely obtain the permit from the City of Eugene, and Defendant's counsel was silent and failed to explain how work might even be performed on the requested date of extension, July 5, 2026.

The Court also noted the importance of ensuring that the Federal Building Plaza, as a traditional public forum, should be open on the Fourth of July. Because Defendant represented it would need 12 hours to complete the work and the work would be performed through the night, the Court granted the extension in part, ordering that Defendant GSA must begin removing the

Page 4 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

perimeter fence by July 1, 2026, and the fence must be fully removed by July 2, 2026, at 7:00AM. ECF No. 38.

The Court issued its written opinion on June 26, 2026. ECF No. 42.

On June 26, 2026, the Ninth Circuit issued an order administratively staying the Court's order until 5:00 p.m. Pacific Time, Monday June 29, 2026. ECF No. 41. That stay was later extended in response to a renewed motion by Defendant until 10:00 a.m. Pacific Time on Tuesday June 30, 2026. ECF No. 44.

On Tuesday, June 30, 2026, before the expiration of its stay, the Ninth Circuit issued the order currently before the Court, remanding for this Court "to consider and clarify what alternative measures the Appellant is authorized to employ (as described in the District Court's Opinion, Dist. Dkt. 42, at page 24, footnote 5), the time line for such measures, and whether such alternative fencing can be constructed and accomplished without maintaining the perimeter fence." ECF No. 47. The order further stated that its interim stay would remain in place "until the issuance of district court's further order." *Id.*

### III.    June 30, 2026, Evidentiary Hearing

On June 30, 2026, the Court convened a hearing to comply with the Ninth Circuit's order to clarify and consider the alternative fencing it authorized in footnote 5 of its Opinion and Order. The Court heard testimony from Mr. Anderson and from Federal Protective Services Area Commander William Turner. The following serves as the Court's response to the Ninth Circuit's remand order.

### DISCUSSION

The Court begins by confirming the specific issues remanded by the Ninth Circuit. The Court understands it was directed only to "consider and clarify" the Court's authorized alternative depicted in the aerial image that appears earlier in this opinion. That image depicts the

only alternative described in footnote 5 of the Court's Opinion and Order, and the only one Defendant was "authorized to employ." The Court also understands that the Ninth Circuit directed it to further explain the authorized alternative and develop the record relating to (1) the timeline associated with that alternative and (2) whether it could be "constructed and accomplished without maintaining the perimeter fence."

The Court understands the Ninth Circuit did not reverse and remand directing the Court to reconsider its decision, order reopening of the record on the merits of its decision granting Plaintiffs' Motion for Preliminary Injunction, or to allow parties to raise new arguments and present evidence it otherwise failed to present at the time of the original evidentiary hearing. With those limitations in mind, the Court makes the following findings of fact based on the testimony presented at the June 30, 2026, evidentiary hearing:

I.    **Factual Findings**

A.    **Based on the Testimony of Mr. Anderson:**

1.  Defendant has retained a contractor to disassemble the existing perimeter fencing and store it on site for a cost of $58,790. As of the time of this hearing, no plans have been implemented to coordinate the removal of the fencing from storage on the building site. The Court concludes that if the fencing remained on site, it could be reinstalled with minimal cost.

2.  The contractor and its crew was on site on June 29, 2026, and Mr. Anderson believes they are still present in Eugene, Oregon as of June 30, 2026. Some equipment, including restrooms and a forklift, are already staged at the site.

3.  The contractor obtained a permit to complete the work associated with the removal and on-site storage of the perimeter fence from the City of Eugene on June 26, 2026. The

permit authorizes overnight work on Monday, June 29, 2026, through Wednesday, July 1, 2026.

4. Equipment, including a forklift to move concrete blocks and fencing, and portable toilets are currently staged at the building site.

5. The Court finds Defendant is fully capable of timely complying with its order to remove the perimeter fencing by July 2, 2026, 7:00AM.

6. The existing perimeter fencing consists of panels that may be moved, stored, and reassembled in different configurations.

7. To implement the Court's authorized alternative, as pictured earlier in this opinion, GSA would be able to repurpose the existing perimeter fencing. Thus, in answer to the Ninth Circuit's inquiry, the existing fencing would necessarily *not* remain in place while the Court's authorized alternative is implemented, should GSA decide to implement it.

8. To implement the Court's authorized alternative on the main portion of the Federal building (not including the annex), GSA believes the existing fencing likely contains enough panels to complete the work.

9. Altering the existing scope of work for the perimeter fence removal to also encompass moving the fence along the main building (not including the annex) would be subject to an expedited process, requiring approval from GSA contracting officer, Mr. Huynh, in San Francisco. Mr. Anderson was not confident the necessary modification to the scope of work could be made by July 2, 2026, and gave no timeline associated with that expedited process.

Page 7 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

10. Federal Building annex depicted on the image provided earlier in this Opinion no longer houses Veterans Affairs services. To implement the portion of the Court's authorized alternative on the currently-vacant annex, GSA would need to acquire approximately 40 additional fencing panels, as well as gates and electronics necessary to install a crashbar on the gates to ensure safe exit. Mr. Anderson estimated the cost for protection of the vacant annex under the Court's authorized alternative could be between $100,000 and $150,000.

11. To implement any plan that requires acquiring additional fencing panels, including the Court's authorized alternative as it relates to the annex, GSA would require 30-34 days to go through the required process to secure GSA approval, funding, and a contractor. In the interim, plywood panels could be used to protect at least some of the windows in the annex.

12. Although GSA represented earlier that the hardening project (installing steel doors and reinforced glass in the atrium) of the federal building would take in the range of 18 months, requiring a 2-year temporary fence, Mr. Anderson learned on June 30, 2026, that the anticipated completion date for the hardening project has now been accelerated, and is scheduled to be completed by December 22, 2026.

13. The hardening project described in paragraph 12 does not include altering any glass windows on the second floor, or the several glass panes on the first level that are not adjacent to the atrium.

**B.    Factual Findings Based on the Testimony of Commander Turner**

14. Commander Turner did not consider the Court's authorized alternative sufficiently protective. He believes it does not adequately protect second floor windows.

15. The Court notes that there are currently no plans for reinforcing the second story glass panes. So even after the only current plan to harden the doors and the glass in the atrium is completed, and when the fence would have otherwise been removed after this hardening, the second story glass would remain unaltered.

16. Before the perimeter fence was constructed, Commander Turner brought in other officers from around the country to provide adequate security to the Federal Building. Construction of the existing perimeter fencing allowed FPS to return to normal operations and provided clear jurisdictional delineation between local police (outside the fence) and FPS (inside the fence).

17. Fence removal and the Court's authorized alternative would both require a return to the same level of security staffing that existed before the installation of the perimeter fence. In other words, Commander Turner saw difference in staffing needs between fence removal and placing the fence as described in the image included earlier in this opinion.

18. FPS has a staffing plan in place for the existing plan to remove the fence consistent with the Court's ruling.

## II.    Clarification and Consideration.

With respect to the Ninth Circuit's instruction to "consider and clarify what alternative measures the Appellant is authorized to employ (as described in the District Court's Opinion, Dist. Dkt. 42, at page 24, footnote 5), the Court has provided the image earlier in this opinion depicting the authorized alternative. Both parties were provided with this image at the June 22, 2026 hearing.

Following further factual development as discussed above, the Court further clarifies that the authorized alternative involves a repurposing of the existing perimeter fencing to ensure that

Page 9 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

the traditional public forum at issue remains open while protecting the building, its employees, and the public.

The evidentiary record developed at the June 30, 2026, further confirms to this Court the necessity of focusing the prohibitory injunctive relief on the removal of the fence rather than the implementation of the Court's authorized alternative fencing. That is so because (1) the perimeter fencing would necessarily need to be disassembled to implement the Court's authorized alternative and (2) the timeline associated with implementing the authorized alternative in full (including protecting the annex) is 30-34 days, which this Court finds an unreasonable delay in light of the First Amendment freedoms at stake.

Even the expedited timeline to incorporate the main building portion of the Court's authorized alternative is speculative. Mr. Anderson was unable to provide a timeline, and GSA is unable to provide any helpful consistency in providing timelines on which this Court can rely in attempting to fashion an appropriate remedy. A few examples of this inconsistency include in the inconsistent testimony on the subject of obtaining a permit when Defendant sought an extension, and more recently the surprise acceleration of the timeline to complete the hardening project.

Further, it is unnecessary that removal of the fence and reconfiguration of the same panels occur at the same time given GSA's intent to store the fence components on site and repurpose it for any alternative fencing.

Finally, Commander Turner's testimony that the Court's authorized alternative would require the same level of security staffing as would a "no fence" alternative raises questions about whether such an alternative furthers the Government's interests.

To be clear, after a meaningfully developed record on June 18, 2026, wherein both parties were given ample opportunity to present all the relevant evidence it chose to offer; after

Page 10 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE

this Court's commitment to more fully understand the context of this evidence by conducting a site visit that same day; and after engaging in an effort to craft a mutually agreeable solution that acknowledged the seriousness of the Defendant's violation of Plaintiffs' First Amendment and Defendant's real and reasonable concerns for ensuring the safety of personnel and property, the Court found a Defendant disinterested in a solution other than a formal decision on the merits. Rather than ordering a mandatory injunctive remedy to move the fence, and given Defendant's incapacity to provide certain timelines even now, the only thing this Court can and should do is order a return to the status quo—the removal of the existing perimeter fence.

## CONCLUSION

The foregoing serves as the Court's consideration and clarification of the matters outlined in the Ninth Circuit's June 30, 2026 Order, and the Court understands that by operation of that order, the issuance of *this* order terminates the administrative stay. This Court's orders remain in place, and Defendant GSA must begin removing the perimeter fence by July 1, 2026, and the fence must be fully removed by July 2, 2026, at 7:00AM.  A hearing remains set for 9:00AM on July 2, 2026, to determine Defendant's compliance.

DATED this 30th day of June 2026.

_____
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

Page 11 — OPINION AND ORDER ON REMAND TO CONSIDER AND CLARIFY AUTHORIZED ALTERNATIVE MEASURE