*Renshaw, et al. v. United States General Services Administration*, No. 26-4023
BEA, Circuit Judge, concurring in denial of application for administrative stay:

I agree with my colleagues that we need not grant the Government's request for a further administrative stay. An administrative stay simply "buys [us] time to deliberate" so that we may avoid rendering an erroneous decision on the merits of a motion for a stay pending appeal, because such motions are "not always easy to evaluate in haste." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of application to vacate stay).

No further time for deliberation is needed here. The Government has shown that it is entitled to a stay pending appeal. The district court's further order of July 1, 2026, does not provide the guidance sought as to what, other than the present fence, would constitute a narrowly tailored measure that the Government can permissibly take to protect the federal building from damage and its occupants from injury during protests similar to those that occurred in September 2025 and January 2026. Rather, its order leaves the building and its occupants unprotected by any sort of a barrier since the undisputed evidence is that another barrier, closer to the building and leaving more space for protests in the federal building plaza, would require 30–34 days because of local permitting regulations. The district court's order to remove the existing fence makes it probable that the Government's protection of the building and its occupants will consist of security personnel. That will raise the risk of personal injuries to both the security personnel and the protesters.

The Government did not erect this fence for no reason. The federal building had been the site of unruly, sometimes violent protests for more than a year, presumably because it houses a facility for U.S. Immigration and Customs Enforcement (ICE). In response, on January 29, 2026, the General Services Administration (GSA) submitted a project request to initiate the construction of a security fence, a security measure that the Federal Protective Service (FPS) had also recommended. As if to confirm the prescience of that recommendation, a violent protest occurred the very next day: A crowd of more than 400 people gathered, and several belligerent protesters breached the building, shattered glass, caused the building's evacuation, and required local police to intervene. The Eugene Police declared the event a riot. The federal building remained closed for more than a week. Even after it reopened, before the fence was installed, substantial vandalism at the federal building continued.

The protesters are not without many other avenues to protest the federal government, including on the sidewalks that surround the federal building and are not enclosed by the fence. "The Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." *Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012). The fence reflects the

Government's reasonable response to its predictive judgment that further protests inside the confined plaza are likely to degenerate into violence as they have in the past. We ought to defer to the Government's assessment of its security risks and allow it to impose reasonable, content- and viewpoint-neutral restrictions, such as the fence. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir. 2005) ("No one could seriously dispute that the government has a significant interest in maintaining public order; indeed this is a core duty that the government owes its citizens . . . In the face of violent riot, the City had a duty to restore order and to ensure the safety of WTO delegates and the residents of Seattle.").

The panel's order to defer consideration of the Government's motion for a stay pending appeal invites further confrontation between the Government and the protesters and ignores the Government's reasonable judgment about what measures are needed to protect federal property, personnel, and, indeed, the protesters themselves. I respectfully disagree with that decision.