**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**JAMES A. BLUM, OSB #257369**
**TSECHU DOLMA, WSBA #64665**
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2936
james.blum@usdoj.gov
tsechu.dolma@usdoj.gov
Telephone:    (503) 727-1000
Attorneys for United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **NAPHTALI RENSHAW; SUSAN BARNHART; TYRRAS WARREN; MICHAEL CARRIGAN; CHRISTOPER ROMPALA; and CHARLES AREFORD,** | Case No. 6:26-cv-01127-MTK |
| Plaintiffs, | DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT |
| v. | |
| **GENERAL SERVICES ADMINISTRATION,** | |
| Defendant. | |

Defendant answers Plaintiffs' Complaint, ECF 1. The numbered paragraphs of this Answer correspond to the numbered paragraphs of the Complaint. The section headings used in this answer are provided solely for the purpose of organizational convenience.

## INTRODUCTION

1. This is a civil action for declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706. The claims arise from defendants' violations of the APA; the First Amendment to the Constitution; various statutes governing public access to federal buildings; and their implementing regulations.

**Answer:** Defendant admits that Plaintiffs characterize their lawsuit, but denies any violation of the Administrative Procedure Act (APA), U.S. Constitution, or any other laws or regulations.

2. This action is brought pursuant to the right of review provision of the APA, 5 U.S.C. § 702.

**Answer:** Defendant admits that Plaintiffs assert legal conclusions regarding the legal basis for their Complaint, to which no response is required.

3. Plaintiffs challenge a decision of the federal government to construct a tall fence around the Eugene federal building, blocking a large portion of the Free Speech Plaza located therein.

**Answer:** Defendant admits that Plaintiffs characterize their lawsuit, to which no response is required. Defendant further admits erecting an eight-foot-tall fence around part of the building to protect the building, its occupants, and its visitors, which partially limited access to a plaza.

**Page 2**        **Answer to Complaint**

4.  Plaintiffs' claims arise under the Administrative Procedure Act ("APA"), 5 §§ U.S.C. 701 *et seq*.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding the legal basis for their complaint, to which no response is required.

### JURISDICTION

5.  This Court properly has jurisdiction over this action under 28 U.S.C. § 1346 (United States as defendant), as well as under 28 U.S.C. § 1331 (federal question), because this action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding subject-matter jurisdiction, to which no response is required.

6.  Judicial review is authorized by 5 U.S.C. § 706, because plaintiffs are adversely affected.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding available judicial relief, to which no response is required. To the extent they may be deemed allegations of fact, they are denied.

7.  An actual, justiciable controversy exists between plaintiffs and defendants. The requested declaratory judgment relief is therefore proper under 5 U.S.C. § 703 and 28 U.S.C. § 2201.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding subject-matter jurisdiction and available judicial relief, to which no response is required.

8.  The challenged Fence Project is final and reviewable agency action; it marks the consummation of agency decision-making, obstructs plaintiffs physically from conducting First Amendment activity, and carries legal consequences, pursuant to 5 U.S.C. § 704.

**Answer:**  Defendant admits that Plaintiffs characterize and assert legal conclusions regarding the APA and the availability of judicial review, to which no response is required. Defendant denies any violation of the APA, the U.S. Constitution, or any other laws or regulations.

9.  The Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and grant permanent injunctive relief. 16 U.S.C. §§ 1855(f), 1861(d); 5 U.S.C. § 706.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding available judicial relief, to which no response is required.

10.  Injunctive relief is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 2202.

**Answer:**  Defendant denies.

**VENUE**

11.  Venue is proper in this District under 28 U.S.C. § 1391(e)(1), because a substantial part of property that is the subject of the action is situated in Lane County, Oregon, which is within this District.

**Answer:**  Defendant admits that Plaintiffs assert legal conclusions regarding venue, to which no response is required. Defendant further admits that the Eugene Federal Building is located in Lane County, Oregon.

**Page 4**          **Answer to Complaint**

**PARTIES**

12.   Plaintiff Naphtali Renshaw resides in Eugene, Oregon, and is a human rights activist who strongly opposes the current immigration policies and tactics. She regularly attends protests against ICE and deportations, and stands in solidarity with immigrant community members. She engages in a variety of protected activities at the Eugene federal building, including assembling on public property (the Eugene city-owned public sidewalks, the federal free speech plaza, and other areas adjacent to the federal building); giving speeches; chanting; singing protest songs; monitoring ICE activities; educating the public about political issues; marching; and using a megaphone to voice opinions about ICE and its tactics.

     **Answer:**  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations.

13.   Renshaw is a member of the interfaith group "Singing for Our Lives," which holds vigils and protests every Tuesday at the Federal Free Speech Plaza, near the corner of 7th and Pearl. They have been holding these vigils since September 2, 2025, and portions of their weekly program are dedicated to holding victims of ICE violence in sacred remembrance.

     **Answer:**  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

14.  Renshaw participated in an additional memorial on Saturday, March 28, 2026, in the inner/upper plaza at the revolving doors of the federal building, which is past the new Fence that was arrested.

**Page 5**       **Answer to Complaint**

**Answer:** As to the allegations concerning Renshaw's participation in a March 28, 2026 memorial, Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant admits only that revolving doors at the plaza side of the building were located behind the fence prior to the fence's removal.

15. As the Singing for Our Lives group has grown, it has become necessary to move further into the Free Speech Plaza to accommodate additional attendees. However, this has presented a significant safety problem -- especially for individuals living with disabilities. Many singers with mobility issues would prefer to enter on Pearl Street, walk through the now-fenced off "tunnel" area where the federal court entrance used to be, and then proceed to the upper plaza area without needing to deal with the stairs.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Free Speech Plaza.

16. Plaintiff Susan Barnhart resides in Eugene, Oregon, and has been a human rights and anti-war activist since the 1980s. She is a retired Oregon social worker who strongly opposes the current immigration policies and tactics. She regularly attends protests against ICE and deportations, and stands in solidarity with immigrant community members. She has protested and continues to protest in Eugene, Oregon, at the downtown federal building. Historically, she has attended protests at the Eugene federal Free Speech Plaza on a regular basis for decades. She has protested numerous wars and other federal government actions, in all areas of that Plaza. In

**Page 6**      **Answer to Complaint**

Eugene, she and a wide coalition of activists opposed to the Trump regime immigration policies and roundups regularly show up at the Eugene federal building.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

17.  Barnhart is part of a local group called Planet vs. Pentagon, that regularly protests the many harms of war. Sometimes the protests are planned, and sometimes they are spontaneous in response to an event.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations.

18.  Barnhart engages in a variety of protected activities at the Eugene federal building, including assembling on public property (the Eugene city-owned public sidewalks, the federal free speech plaza, and other areas adjacent to the federal building); giving speeches; singing protest songs; chanting; marching; monitoring ICE activities; educating the public about political issues; and using a megaphone to voice her opinions about ICE and its tactics.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations.

19.  Barnhart and other elders in the community use the benches in the Federal Free Speech Plaza to sit and participate in these political events.

**Page 7**        **Answer to Complaint**

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

20. Currently, due to the Fence, Barnhart and others no longer have access to the benches on the Free Speech Plaza.

**Answer:** Defendant denies, as the fence is not currently in place. Answering further, Defendant admits that benches on the plaza were inaccessible to the public while the fence was installed. Answering further, Defendant denies any implied averment that the plaza is officially named the Free Speech Plaza.

21. Barnhart and other plaintiffs have seen first-hand that some elders who have mobility issues access the Free Speech Plaza from Pearl Street and, until the Fence was erected, walked the level paved area to the upper Free Speech Plaza area where the benches are located, which is the only access to the plaza that does not require climbing stairs.

**Answer:** As to the allegations concerning Plaintiffs' observations, Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. As to the allegations concerning access to the plaza, Defendant denies that the ramp from Pearl Street is the only means of accessing the upper portion of the plaza without climbing stairs. Answering further, Defendant denies any implied averment that the plaza is officially named the Free Speech Plaza.

**Page 8        Answer to Complaint**

22.  Plaintiff Tyrras Warren is another Eugene community activist whose First Amendment activities are harmed by the Fence. Until it was fenced off, he gathered with others in the Federal Free Speech Plaza area, including the upper plaza areas near the ICE entry doors, for lawful assembly and protest, including using art as his expression. He has often been part of assemblies that simply do not fit into the small remaining area of the Plaza that is now accessible. Since the Fence went up, he has observed people with mobility issues squeezed out of gathering on the Plaza, because the crowds in the smaller remaining area were too dense and they were unable to go up the stairs. Prior to the Fencing, he observed several people with mobility issues, particularly older folks, enter on the Pearl Street side, walk or wheel themselves through the now fenced-off corridor area (where the former entrance to the federal court was located), and into the upper open Plaza area so they could safely join in the protests.

**Answer:**  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

23.  Plaintiff Michael Carrigan has resided in Eugene, Oregon, since the early 1970s. A practicing Buddhist, he has been a human rights and anti-war activist his entire adult life. He is retired now, but for fourteen years he worked at the Community Alliance of Lane County (CALC), a nonprofit that collaborates to create a more just and peaceful community. Before that, he organized with Clergy and Laity Concerned about Vietnam (now CALC). A strong opponent to the current administration's immigration policies and numerous global acts of aggression and war, he regularly attends protests against ICE and deportations at the Eugene federal building, and stands in solidarity with immigrant community members.

**Page 9        Answer to Complaint**

**Answer:**  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations.

24.  Carrigan has historically organized and attended countless rallies and protests at the Federal Free Speech Plaza on a regular basis since the 1970s. He knows first-hand that, in the 1970s, the Eugene Federal building (formerly housing the Federal Courthouse) and its Free Speech Plaza were center stage for hundreds of anti-war protests. Since then, the location has been the site of protests for numerous causes and court cases -- from war, to forests and climate, to inhumane and senseless immigration actions. Its large size, central location, seat of the federal government in Eugene, visibility to traffic on three sides, and the fact that it is Eugene's primary traditional public forum have made it one of the most used locations for rallies and protests throughout the decades.

**Answer:**  As to the allegations concerning Carrigan's rally and protest activities, Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. As to the allegations concerning protest activities at the building, Defendant admits only that the building has been a site of protest activity. The remaining allegations contain Plaintiffs' opinions and characterizations of such protest activities, to which no response is required. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

25.  Like Plaintiff Barnhart, Carrigan is part of the local group called Planet vs. Pentagon that regularly protests the many harms of war at the Plaza. And, as an elder in the community, he also has used the benches in the Federal Free Speech Plaza to sit and participate in the events.

**Page 10**        **Answer to Complaint**

Currently, due to the fencing, he and others no longer have access to the benches on the Free Speech Plaza.

**Answer:** As to the allegations concerning Barnhart's and Carrigan's protest activities, Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. As to the allegations concerning access to benches, Defendant denies the allegations as the fence is not currently in place. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

26.  Plaintiff Christopher Rompala is a local community member, nurse, and human rights activist who strongly opposes the current immigration policies and tactics. He has attended protests against ICE and deportation at the downtown federal building, and will continue to do so. In late January 2026, he participated in a candlelight vigil organized and attended by himself and many other local nurses after the ICE killing of nurse Alex Pretti in Minneapolis. They held the vigil in the upper Plaza area, which is now fenced off. The candlelight vigil included people assembling and grieving together, laying down flowers and other items in a shrine, participated in speeches, songs and other expression. Hundreds of community members attended this vigil. There is no way that vigil would fit into the small Federal Free Speech Plaza area that is currently open for public use.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

**Page 11        Answer to Complaint**

27.  Plaintiff Charles Areford has participated and continues to participate in regular protests and First Amendment activity at the Eugene federal courthouse.

**Answer:**  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations.

28.  The current fencing greatly limits the access to the Free Speech Plaza and limits the ability of disabled people to safely access any area of the Free Speech Plaza other than the area adjacent to the sidewalk at 7th and Pearl -- which is now packed with people because it is the only small area available to assemble.

**Answer:**  Defendant denies, as the fence is not currently in place. Answering further, the allegations contain Plaintiffs' opinions and characterizations regarding areas accessible to the public while the fence was installed, to which no response is required; to the extent a response is deemed to be required, the allegations are denied. Answering further, Defendant denies any implied averment that the plaza is officially named the Free Speech Plaza.

29.  The fence and closure of all but a sliver of the Plaza has greatly harmed people's ability to gather, sing, pray, and protest at the Eugene federal building, the location where the harm and suffering of our immigrant community members are perpetuated.

**Answer:**  Defendant denies.

30.  The plaintiffs and others similarly situated will continue to show up and protest at the Eugene federal building, and specifically intend to use the entire Federal Free Speech Plaza, as well as the public sidewalks adjacent to the ICE building, weekly or more frequently; and the

**Page 12      Answer to Complaint**

blocking off of the upper Plaza is an ongoing harm to their constitutional right to express themselves under the First Amendment, and to their liberty. The decision to fence off portions of the Federal Free Speech Plaza is preventing and will continue to prevent plaintiffs and others similarly situated from utilizing these traditional public forums for their assembly, speech and protest.

**Answer:** As to the allegations concerning Plaintiffs' intended protest activities, Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the allegations. The remaining allegations are denied. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

31. Plaintiffs have sustained injury to their interests from the building of the Fence.

**Answer:** Defendant denies.

32. Defendant General Services Agency, as an agency of the federal government, manages federal property, and in doing so is required to comply with various laws and regulations, including the First Amendment to the U.S. Constitution.

**Answer:** Defendant is the General Services Administration. It otherwise admits.

### FACTUAL BACKGROUND

33. On April 29, 2026, the federal government erected a tall gate/fence ("the Fence") around much of the Eugene downtown federal building where ICE and other federal agencies are housed (hereinafter "Eugene federal building"). The Eugene federal building is surrounded on all four sides with public (City of Eugene) sidewalks, and contains the Federal Free Speech Plaza area near the corner of Pearl Street and 7th Avenue. Both that Plaza and the sidewalks around the

**Page 13**    **Answer to Complaint**

federal building have for decades been a traditional location for assembly, protest, vigils, and other First Amendment activity.

**Answer:**  Regarding the first sentence, Defendant admits that installation of the eight-foot fence began April 29, 2026, and once installed, bordered two sides of the building. Regarding the second sentence, Defendant admits the allegations but denies that the plaza is officially named as stated. Regarding the third sentence, Defendant admits that these types of activities have occurred on and around this federal property but otherwise denies Plaintiffs' characterizations of the property or any legal conclusions expressed by Plaintiffs. Answering further, Defendant denies any implied averment that the plaza is officially named the Federal Free Speech Plaza.

34.  The Plaza has a small, lower area near the corner of 7th Avenue and Pearl Street (the lower Plaza) and a much larger area up a small flight of broad stairs, where there are benches, grassy areas, and a paved area suitable for speeches and gatherings (the upper Plaza). That upper Plaza is also accessible through a breezeway from Pearl Street, with no stairs. The April 2026 Fence Project has blocked off all public access to the upper Plaza.

**Answer:**  Defendant admits the allegations but denies any implied averment that the upper portion of the plaza is intended for speeches and gatherings.

35.  As noted *supra* in the allegations regarding the plaintiffs, the Fence Project has harmed and will continue to harm the First Amendment interests of the plaintiffs and others similarly situated.

**Answer:**  Defendant denies.

**Page 14        Answer to Complaint**

36.  To plaintiffs' knowledge, defendants provided no opportunity for public notice and comment on the Fence Project.

**Answer:**  Defendant admits that a notice and comment period was neither provided nor required.

37.  The first public announcement regarding the Project, to plaintiffs' knowledge, was in February 2026, when the Eugene Police Chief Skinner told the Eugene Police Commission that a fence would be erected shutting off access to the courtyard area of the federal building, following protests two weeks earlier. He stated: "We are facilitating the arrival of some fencing that will go up there"; that its purpose would be "helping to better articulate kind of the spaces where the protesting can or should occur"; and that crossing the barrier should let protesters "know that you're likely going to be met with a with a fairly resistive outcome." Skinner stated that he expected the city to be issuing permits to "close streets down for a variety of different things to help facilitate that, and so we'll likely be doing that in the coming week or weeks."

**Answer:**  Defendant admits that Plaintiffs purport to characterize a February 2026 statement by the Eugene Police Chief, but denies any characterization contrary to the plain language, meaning, and context of any such statement.

38.  A City response to a public records request indicated that the federal General Services Administration was advising the City of Eugene that the "purpose" of the Fence Project was that "[t]he temporary fence is required for approximately two years to protect the building, employees, and facilitate repairs to damaged structures."

**Page 15**        **Answer to Complaint**

**Answer:** Defendant admits that Plaintiffs purport to characterize an unidentified/uncited GSA statement, but denies any characterization contrary to the plain language, meaning, and context of any such statement.

39. The federal government told the City that "the fence will be installed on the sidewalk until it connects to the plaza. We will provide a designated space for protesters to exercise their First Amendment rights by utilizing the lower 'free speech plaza.' From the plaza we will connect the fence along the city sidewalk of 7th st. where it will connect back onto Federal property and finish against the South tower"; and "The lower plaza will be fenced off to provide the public a space to exercise peaceful protest activities."

**Answer:** Defendant admits that Plaintiffs purport to characterize an unidentified/uncited GSA statement, but denies any characterization contrary to the plain language, meaning, and context of any such statement.

40. The federal website regarding the Eugene federal courthouse Plaza states:

> The Eugene Federal Building and Courthouse played a significant civil role in the early 1970s and during the Vietnam War. The plaza was and remains a favored venue as a stage for protests against the government's policies. There is demonstration activity weekly. Large demonstrations occurred in the spring of 2003, over the U.S. invasion of Iraq, in 1991, with a demonstration against the U.S. invasion of Kuwait and in 1992, due to the Rodney King beating. Most of the demonstrations are peaceful and without violence or arrests. The plaza has become a community focal point for citizen gatherings of many types. The courtyard was designed for people to congregate and be part of outdoor events and venues. The courtyard design was not intended for political demonstrations, but it has gained cultural and political significance due to these activities.

https://web.archive.org/web/20160303173759/http://www.gsa.gov/portal/ext/html/site/hb /category/25431/actionParameter/exploreByBuilding/buildingId/1144# ("Significance"

**Page 16        Answer to Complaint**

tab).

**Answer:** Defendant denies that the federal website for the building currently contains the referenced statement. Answering further, Defendant admits that the statement may be found at the referenced web archive address.

41. 40 U.S.C. 3306 dictates the public space policies for the GSA. Among other things, it requires GSA administrators, to the extent practicable, to encourage public access and maintain pedestrian traffic around and through public buildings.

**Answer:** Defendant admits that Plaintiffs purport to characterize certain requirements of 40 U.S.C. § 3306, but denies any characterization contrary to the plain language, meaning, and context of the statute.

42. The Architectural Barriers Act of 1968 (42 U.S.C. § 4151 *et seq.*) prohibits physical barriers that deny access to individuals with disabilities.

**Answer:** Defendant admits that Plaintiffs purport to characterize certain prohibitions under the Architectural Barriers Act (ABA), but denies any characterization contrary to the plain language, meaning, and context of the ABA and related authorities.

**CLAIMS FOR RELIEF**

**Count I**
**APA – 5 U.S.C. 706(2)(A) -- Arbitrary and Capricious Decision**

1. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

**Answer:** Defendant realleges and incorporates by reference its responses to all preceding paragraphs in this Answer.

**Page 17       Answer to Complaint**

2.  The Administrative Procedure Act authorizes judicial review of final agency action. 5 U.S.C. § 704.

Answer:  Defendant admits that Plaintiffs characterize and assert legal conclusions regarding the APA and availability of judicial review, but denies any characterizations contrary to the plain language, meaning, and context of the APA and related authorities.

3.  Final agency actions are those (1) that "mark the consummation of the agency's decision-making process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation marks omitted).

Answer:  Defendant admits that Plaintiffs purport to characterize a decision by the United States Supreme Court, but denies any characterizations contrary to the plain language, meaning, and context of the decision.

4.  Plaintiffs challenge the government's building of the Fence – a final agency action that marks the consummation of the government's decision-making process because, to plaintiffs' knowledge, there are no further steps necessary to complete that project.

Answer:  Defendant admits that Plaintiffs characterize their lawsuit, to which no response is required. Defendant further admits that installation of the fence was completed by GSA's contractor prior to the fence's removal.

5.  Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

**Page 18          Answer to Complaint**

**Answer:** Defendant admits that Plaintiffs purport to characterize certain provisions of the APA, but denies any characterizations contrary to the plain language, meaning, and context of the APA and related authorities.

6. The building of the Fence is arbitrary and capricious in multiple respects:

a. First, as set forth herein, the building of the Fence conflicts with laws, regulations, and constitutional provisions. This alone renders it arbitrary and capricious.

b. Second, the defendants have failed to proffer a reasonable explanation for the building of the Fence.

c. Third, the building of the Fence reflects no consideration of reasonable alternative approaches.

d. Fourth, the building of the Fence failed to consider important aspects of the problem.

**Answer:** Defendant denies.

7. For these and other failings, the building of the Fence is arbitrary and capricious.

**Answer:** Defendant denies.

8. As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

**Answer:** Defendant denies.

**Page 19          Answer to Complaint**

9.  Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

**Answer:**  Defendant denies.

## COUNT II

**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(B)
Contrary to Constitutional Right**

10.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

**Answer:**  Defendant realleges and incorporates by reference its responses to all preceding paragraphs in this Answer.

11.  The APA requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is found to be contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

**Answer:**  Defendant admits that Plaintiffs characterize and assert legal conclusions regarding the APA and available judicial relief, but denies any characterizations contrary to the plain language, meaning, and context of the APA and related authorities.

12.  Defendants' decision to build the Fence, and the building of the Fence, are contrary to the First Amendment's protections for speech, protest, and expressive conduct.

**Answer:**  Defendant denies.

13.  As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

**Page 20        Answer to Complaint**

**Answer:** Defendant denies.

14. Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

**Answer:** Defendant denies.

## Count III

### Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(B)
### Decision Contrary to Law

15. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

**Answer:** Defendant realleges and incorporates by reference its responses to all preceding paragraphs in this Answer.

16. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

**Answer:** Defendant admits that Plaintiffs purport to characterize certain provisions of the APA, but denies any characterizations contrary to the plain language, meaning, and context of the APA and related authorities.

17. The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original).

**Answer:** Defendant admits that Plaintiffs purport to characterize a decision by the United States Supreme Court, but denies any characterizations contrary to the plain language, meaning, and context of the decision.

**Page 21        Answer to Complaint**

18.  The decision to build the Fence is not in accordance with law because it is contrary to the statutes set forth *supra*.

**Answer:**  Defendant denies.

19.  As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

**Answer:**  Defendant denies.

20.  Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

**Answer:**  Defendant denies.

**Count IV**

**Violation of the Administrative Procedure Act -- 5 U.S.C. § 706(2)(D)**
**Failure to Observe Required Procedure**

21.  Plaintiffs restate and reallege all paragraphs above as if fully set forth herein.

**Answer:**  Defendant realleges and incorporates by reference its responses to all preceding paragraphs in this Answer.

22.  A reviewing court must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

**Page 22**        **Answer to Complaint**

**Answer:** Defendant admits that Plaintiffs purport to characterize certain provisions of the APA, but denies any characterizations contrary to the plain language, meaning, and context of the APA and related authorities.

23. The APA requires that agencies follow public notice-and-comment rulemaking procedures before promulgating regulations. *Id.* § 553(b), (c).

**Answer:** Defendant admits that Plaintiffs purport to characterize certain procedures and requirements under the APA, but denies any characterization contrary to the plain language, meaning, and context of the APA and related authorities.

24. Defendants failed to provide notice and an opportunity for public comment regarding the building of the Fence.

**Answer:** Defendant admits that a notice and comment period was neither provided nor required.

25. Defendants' actions as described above are arbitrary and capricious and/or without observance of procedure required by law; and therefore, violate the APA. 5 U.S.C. § 706(2).

**Answer:** Defendant denies.

26. As a proximate result of defendants' unlawful action, plaintiffs have suffered and will continue to suffer injury to their First Amendment rights, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

**Answer:** Defendant denies.

**Page 23     Answer to Complaint**

27.  Absent injunctive relief, defendants' constructed Fence Project will continue to block Plaintiffs' and others' access to the upper Plaza, causing ongoing and irreparable harm.

**Answer:**  Defendant denies.

**DEFENDANT'S GENERAL DENIAL**

Defendant denies each allegation in the Complaint that it has not specifically admitted or otherwise responded to in this Answer.

**PLAINTIFFS' DEMAND FOR RELIEF**

The remainder of the Complaint consists of a Demand for Relief, to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiffs are entitled to the relief requested or to any relief whatsoever.

**AFFIRMATIVE AND OTHER DEFENSES**

1.  Plaintiffs fail to identify a substantive legal basis for their claims under 5 U.S.C. § 706(2)(A) and (C).

2.  Defendant's decision to erect the security fence was not agency rulemaking, and therefore no notice-and-comment process was required.

3.  Defendant retained the right to close part of its property for security, repairs, and continuity of operations without implicating First Amendment scrutiny.

4.  Defendant's decision to erect the security fence was a reasonable time, place, and manner restriction on speech.

**RESERVATION OF RIGHTS**

Defendant reserves the right to amend this Answer, including by adding affirmative defenses, as additional information becomes known through investigation, research, or otherwise.

**Page 24        Answer to Complaint**

**DEFENDANT'S PRAYER FOR RELIEF**

WHEREFORE, Defendant respectfully requests that this Court:

A. Dismiss Plaintiffs' Complaint with prejudice;

B. Deny Plaintiffs all relief requested;

C. Enter judgment against Plaintiffs and for Defendant;

D. Award Defendant its costs in this action; and

E. Provide Defendant such other relief as this Court deems just and equitable.


DATED this 10th day of August 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ James A. Blum*
JAMES A. BLUM
Assistant United States Attorney

*/s/ Tsechu Dolma*
TSECHU DOLMA
Assistant United States Attorney

Attorneys for Defendant

**Page 25     Answer to Complaint**